Argued and submitted July 22, affirmed December 26, 1985

CLACKAMAS COUNTY SERVICE DISTRICT NO. 1
*Respondent,*

*v.*

AMERICAN GUARANTY LIFE INSURANCE
COMPANY,
*Respondent,*

*v.*

PARKER et al,
*Appellants.*

(81-1-97; CA A32167)

711 P2d 980

Michael J. Martinis, Salem, argued the cause and filed the brief for appellants.

Nancy S. Tauman, Oregon City, argued the cause for respondent Clackamas County Service District No. 1. With her on the brief were Clark I. Balfour, and Hibbard, Caldwell, Bowerman, Schultz & Hergert, Oregon City.

Robert J. Miller, Sr., Beaverton, waived appearance for respondent American Guaranty Life Insurance Company.

Before Richardson, Presiding Judge, Joseph, Chief Judge,* and Warden, Judge.

WARDEN, J.

---

* Joseph, C. J., *vice* Newman, J.

## WARDEN, J.

Plaintiff, a public body, brought this condemnation action in 1981 to acquire a 6.2-acre parcel owned by defendant American Guaranty [Guaranty]. Plaintiff intends to install and operate a sewage treatment plant and related facilities on the parcel. Defendants Parker deeded the parcel to Guaranty in February, 1977, after Guaranty had exercised its right to purchase under an option agreement which the parties had executed the previous September. Both Guaranty and the Parkers own other property in the area, and both intend to use their property for residential development. The Parkers' property, consisting of approximately 27 acres, abuts the parcel that they conveyed to Guaranty.

The option agreement provided, as material:

"(1)  It is understood that the buyer [Guaranty] reserves the right to make application to the County of Clackamas using the subject acreage as part of [its] planned unit development. Moreover, it is the intent to use a portion of the property for construction of a sewer treatment plant to be used as an interim plant until an overall sewer system becomes a reality in the Welches-Wemme area. The buyer reserves the privilege to include this acreage in [its] planned development for the life of this option.

"(2)  In addition to providing sewer treatment facilities for [its] own development the buyer agrees to provide sufficient treatment facilities to serve the owner's [Parkers'] remaining acreage which consists of some 27.3 acres that is near or abuts the 6.2 acres under option. The owner agrees to pay $500.00 per unit hookup for sewer connections, construct, at his own expense[,] the necessary sewer lines to the treatment plant, and to pay his prorata share of any monthly maintenance charge as levied by the service district. Sewer service extensions to the owner's remaining property shall be subject to the County's approval of same.

"* * * * *

"(4)  If approval of the location of the treatment plant is not acquired by the buyer on the 6.2 acres this option will become null and void."

The deed from the Parkers to Guaranty recites that "seller [*sic*] reserve all rights in that Section 2" of the option agreement.

The county rejected Guaranty's application to install the facilities on the parcel, and Guaranty never performed its obligations to the Parkers under the deed and the option agreement.[1] Plaintiff brought this action in January, 1981, approximately four years after the Parkers had conveyed the parcel to Guaranty.

There is no dispute between plaintiff and Guaranty. The issue is whether the Parkers have any property interest in the parcel for which plaintiff must compensate them. The trial court granted summary judgment for plaintiff on that issue, and it entered a decree of condemnation awarding compensation to Guaranty and declaring that the Parkers have no compensable interest.[2] The Parkers appeal.[3] They argue that the option agreement and the deed give them either an easement or a covenant running with the land and that they are entitled to compensation in either event.[4]

The Parkers' easement theory was not adequately raised in the trial court, and we decline to consider it. We turn to their theory that Guaranty's promise to make sewage facilities available was a covenant running with the land. For a covenant to run with the land, it is necessary, *inter alia,* "that the parties to the promise intend that the promissor's successors in title be bound." *Huff v. Duncan,* 263 Or 408, 411, 502 P2d 584 (1972). The evidence submitted on the motion for summary judgment is conclusive that the Parkers and Guaranty did not so intend here. The Parkers' contrary assertion is

---

[1] The Parkers seem to suggest in their brief that Guaranty did obtain *some* level of county approval. However, the approval necessary for installation of the facility on the parcel was not obtained. It is not clear why the Parkers allowed Guaranty to exercise the option before it had obtained approval of the installation of the facility, but that problem is not germane to our inquiry.

[2] The Parkers filed a cross-claim against Guaranty for breach of the covenant. That cross-claim was not resolved by the decree. The trial court made an appropriate certification of finality pursuant to ORCP 67B.

[3] Guaranty did not file a brief in response to the appeal.

[4] Because of our disposition, we need not decide whether a covenant running with the land *can* constitute a compensable property interest in a condemnation proceeding.

The Parkers contended below and *state* in their brief that their interest can also be characterized as an equitable servitude. However, they make no separate argument here to demonstrate that it could be so characterized. In any event, the basis for our disposition is as inconsistent with the Parkers' having an equitable servitude as with their having the benefit of a covenant running with the land.

based on the incorporation in the deed of the second paragraph of the agreement and on their statement in their brief that the printed form deed states "that each parties' [*sic*] 'heirs, successors and assigns' are bound by the obligations and warranties of the Deed and the covenant." That statement is inaccurate. The deed refers to "heirs, successors and assigns" three times. Each of the references is to rights inuring to the *grantee's* heirs, successors and assigns, and none of the references has anything to do with the provision of the option agreement incorporated into the deed.[5]

■ The Parkers argue that paragraph (2) of the agreement is referred to in the deed and, *read alone,* that it contains an absolute promise pertaining to the land. However, this is not a case in which the doctrine of merger by deed is applicable. In *Land Reclamation v. Riverside Corp.,* 261 Or 180, 492 P2d 263 (1972), the seller executed and delivered a warranty deed that contained no restrictions on the use of or continued possession of the land. The parties' land sale contract provided that the buyer was to use the land exclusively as a sanitary landfill and that the buyer would reconvey the property or the title would revert to the seller if certain events occurred affecting the use of the land for the specified purpose. The buyer brought a declaratory judgment action, contending that, by virtue of the deed into which the contract was purportedly merged, it was entitled to use the land for purposes other than the one specified in the contract. The Supreme Court said, in explaining its rejection of that contention:

> "In the present case the evidence definitely establishes that the parties did not intend the deed to memorialize their agreement as to the use of the land. The written contract of April 30, 1970 makes it clear that the deed was simply to serve as the vehicle for passing title to plaintiff for the purpose of using the land for a sanitary land fill operation. The contract expressly provides for the conveyance of the land, specifies the use to which the land would be put, and sets out in detail the

---

[5] However, the agreement provides:

"The owners [*sic*] rights herein are assignable and transferable without the second party's consent and inure to the benefit of owners' heirs, successors and assigns."

The agreement is silent regarding the effect of a transfer or assignment of Guaranty's interest.

circumstances under which the title would revest in the grantor.

"There is no rule of law which precludes the parties from using two written instruments rather than one to effectually carry out their agreement. * * *

"Plaintiff argues that even if the contract and deed are read together, the provision that 'the property shall be used by the Buyer for a sanitary land fill' does not have a limiting or restrictive meaning that the land cannot be used for other compatible purposes. On this basis plaintiff asserts the right to remove gravel from the land in question.

"If we had the limiting clause and nothing more, plaintiff's contention would have some force. But taking the agreement as a whole, it appears that the limitation was intended to restrict the grantee to the single use specified in the limitation. The contract contemplated a use for a limited time, it being agreed that the grantor could repurchase at the end of ten years or prior thereto if the land fill operation was completed or was terminated. This would indicate that the grantor intended to preserve its rights to use the land at the end of that time for other purposes." 261 Or at 184. (Footnote omitted.)

■■ Similarly here, provisions of the agreement other than the one mentioned in the deed are germane to the parties' post-conveyance rights and obligations regarding the land, and the agreement as a whole must be considered.[6] Paragraph (1) *may* make Guaranty's obligation under paragraph (2) completely conditional; far more importantly, paragraph (1) specifies that the sewage treatment plant the parties contemplated that Guaranty would install was "an interim plant" to be used "until an overall sewer system becomes a reality" in the area. The parties could not have intended any promise to provide sewage treatment facilities until an overall system became a reality to run with the land after the land was taken by plaintiff for the very purpose of bringing that reality about. More to the point, the quoted language from paragraph (1),

---

[6] The affidavit of William Parker, which was submitted in opposition to plaintiff's summary judgment motion, indicates that he understood that the deed itself was intended to create an absolute obligation and to supersede anything inconsistent in the agreement. However, we read the affidavit—with its repeated prefatory caveats such as "it was my understanding" and "there was no doubt in my mind"—as bearing only on *Parker's* intent and on his perception of the legal effect of his acts.

together with the proviso in paragraph (4) that the option would be void if the necessary condition precedent to Guaranty's performance of its covenant was not met, demonstrates conclusively that the parties did not intend the covenant to run with the land.

Affirmed.[7]

---

[7] The compensation the Parkers seek, as explained by their attorney, was calculated

"by going to [plaintiff] itself and saying if the Parkers were to include [their] land within the district, chose to be assessed, what would the charge be by doing it the cheapest way possible but to make the maximum amount of use of the property."

In other words, the Parkers ask for compensation from plaintiff that is equal to the amount the Parkers would be required to pay plaintiff for the governmental services plaintiff intends to use the condemned parcel to provide. The Parkers seek the same amount, in the alternative, as damages in their cross-claim against Guaranty. *See* n 2, *supra.*

In view of the basis for our holding, we do not reach the question whether a party to a land sale contract *can* bestow a compensable interest on the other party by promising to provide the exact service that a condemning authority later takes the land in order to provide. *See City of Eugene v. Wiley et ux,* 225 Or 327, 329-30, 358 P2d 286 (1960) (holding that assessments that will be imposed on the land by the condemning authority are not includable in just compensation, because, "[t]o permit their recovery as a part of the damages in the condemnation proceeding would in effect constitute a payment of the benefits by the city and not the property owner as the law requires.").